Mr. Murphy, happy to hear from you. Yes, sir. Good morning. The district court in this case, after accepting jurisdiction based on removal and applying the doctrine of procedural misjoinder, then proceeded to rule on the substantive issue at the summary judgment stage and applied a wrong standard in our view and also misapplied the law in subject to her order granting summary judgment. In favor, Ms. Cramer, should be reversed outright. Judgment in favor of national casualties should be entered upon remand. What was the straightforward declaratory judgment action in your view? Well, originally, Your Honor, it started out with three causes of action against national casualties. The declaratory judgment to reform the policy and declare coverage, a breach of contract, and bad faith refusal to pay Ms. Cramer the benefits. They also joined Mary Ann Wally, who was the at-fault motorist in this auto accident as a... Well, where did it finally end up? It ended up at the time that we removed it, the judge severed the claims and remanded the case against Ms. Wally based on negligence to state court. We proceeded to summary judgment and filed cross motions on the coverage issue, the court having already dismissed the breach of contract and bad faith claims. So the issue was whether Ms. Cramer was occupying the covered auto, which was an ambulance that she had driven to deliver a patient to a cancer center while there observed an accident on the roadway in front of the cancer center, had parked the ambulance, checked on a few motorists, and then was standing on the shoulder of the road when she was hit by another motorist passing by, struck by her mirror. And in that situation, the policy language is restrictive. She had to be occupying the covered auto, which was the ambulance, in order to be covered. And occupying is defined to mean in, on, getting in, on, out, or off. The district court noted that really the only phrase from that definition that would apply was the getting in. But misapplied, the holding from an older case from the South Carolina Supreme Court, and kind of mixed some apples and oranges to kind of come up with her own test, saying South Carolina didn't have one. The Whitmire case, yes. So since South Carolina, since the district court says South Carolina didn't, doesn't have a test, and this is uniquely based on South Carolina law, what about certifying the question to the South Carolina Supreme Court? That is certainly an option for this court. That was requested in the district court by Plank, by Capelli. We didn't think it was necessary because I think Whitmire does in its, you can distill Whitmire down to some principles that would apply to this case, but that's certainly a possibility. Whitmire said at the end, it said this was a person who had gotten out of a vehicle on the traveled highway and immediately went to the rear of the shoulder. And they said coverage was intended to protect a guest who is still engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions. If you just kind of reverse engineer that standard, you would realize that it would have to be the point that someone begins to enter the vehicle. And the things that were noted by the Supreme Court in the Whitmire case were close proximity to the vehicle in both time and distance, a direct route as opposed to indirect, and someone would have to have left a place of safety because in Whitmire the key was to be exiting or alighting from the vehicle. It would not extend once the person got to the place of safety. And of the facts, some of which were favorably found to Ms. Kramer at the summary judgment stage, but one fact that would be determinative and would establish a bright line under Whitmire would be the fact that she was still in a place of relative safety and had not taken steps toward the vehicle. She acknowledges in her brief that she was standing and waiting, and certainly someone who's on the shoulder and not in motion is not occupying the covered auto from that distance. And the court also placed a little undue reliance on... Doesn't South Carolina public policy favor construing the policy in favor of the insured? Not necessarily. It says to construe it broadly, but it's still, this is voluntary coverage, and the courts, our rules of construction are pretty similar to many other states. You can't torture the language to say someone could occupy a vehicle from across the road. That sounds like torture to me. That's extra broadly. Yes, that's beyond any reasonable. We don't know in South Carolina based on Whitmire precisely where someone would begin entering a vehicle. It's hard to imagine entering a vehicle farther away than this. Was she across the street from the vehicle? She was across the street from the vehicle, and she was standing and waiting. The Jensen case from the South Carolina Court of Appeals is the only other entering or getting in language case ruled upon in appellate courts in South Carolina. In that case, they said the subjective intent to occupy the vehicle in the future, even the near future, was not enough, could not be considered. In this case, really the only connection to the vehicle was what was going on in her mind. So if she had been in motion then, if she had been, let's just say she was standing on the side of the roadway and had advanced two steps across, she was still a good distance from the vehicle. Would she be in the process of getting in under your analysis? She would not, based on my analysis in Whitmire, which noted that the individuals in that case were very close, close enough to touch the vehicle, no more than two or three feet away. That's why we cited some out-of-jurisdiction cases who go from when you leave a place of you must be able to affect entry. And my rule of thumb has always been on these cases, and two of the cases from the district court that we cited, the White case and the Hamilton case, were also cases I argued. I kind of go back to the Leonard Skinner give me three steps rule, but it's hard to affect the process of entering from more than two or three steps away. Whitmire kind of noticed that in their case, and we cited those other cases. But this court doesn't have to establish the precise moment. You said whatever getting is, it's not this case. It's not this case, because it can never apply to someone who is already in a place of safety. And that's undisputed, even in the brief, the judge said some things in her order that really are not, said she was crossing the street. There's no evidence she was crossing the street. The evidence is she was waiting and intended to cross the street perhaps. That's one of the disputed facts we talked about, that if you believe everything in her favor, you can't then grant summary judgment based on that to her. You could believe everything in Ms. Kramer's favor and grant summary judgment to national casualty, and if you do that, it's her activity that must be viewed, not her intent. So the fact that she intended to cross the road and get back in the vehicle, even if the intent was perfectly clear, that would still be irrelevant? Under the Jensen case, yes, sir, because the intent was undisputed. The gentleman's car was being loaded onto the tow truck, and he was going to leave the scene in the tow truck. But he had not yet begun the process of actually getting in. Because if you make intent, if you make subjective intent a relevant factor, then anybody in a parking lot would likely be covered because most people, when they leave an office and go into a parking lot, are intending to get in their own vehicle in the parking lot. And so the intent analysis would extend the notion of occupation quite a long ways. Yes, sir. I thought about my associate Mr. Sawyer here. When we shake hands and leave, it will be his intent to get in my vehicle down by the Berkeley to ride back to South Carolina. But between here and the curb, he's not actually entering the vehicle. One thing, and that is that parking garages are not always adjacent, or parking lots aren't always adjacent to an office building. So sometimes they're one or two blocks away. So somebody leaves the office, obviously going home, but they get hit in the street. No, no, they had an intent to get to the parking lot and get in the vehicle. So that makes it pretty elastic. It does. We cited a couple out-of-jurisdiction cases, and one from Texas, the Godot case, mentioned that getting in must be analyzed in light of the word it is defining, which is occupying. And that's a very limited concept, because occupy is to possess. Okay, Mr. Murphy? Yes. I don't mean to interrupt you there, but what if we disagree with you that she was in a place of safety? Because after all, she was hit by the vehicle. It says it's relative safety. Okay, well... The shoulder is designated as the place for pedestrians. Well... And so, you know, you could be in your living room. I've had cases where people were in their living room, and someone drove into their living room. Right, but isn't that a factual question as to whether she was in a relative place of safety? You're saying it's a matter of law she was in a relative place? Yes, because if you look at the Southwest Statute, vehicles have the right-of-way on And so, the fact that she has a claim against the motors is because she was in the proper place on the shoulder. If you look at the Whitmire case, they place a lot of emphasis that if he had gotten to the shoulder. It says relative safety. No place is 100% safe. If there was a sidewalk or a shoulder, they're viewed the same way under South Carolina statutory law in terms of pedestrians. Yeah, I was just curious as to whether that's an issue of fact or an issue of law. It's not an issue. You're saying it's an issue of law. It's an issue of law because cars are not allowed to drive on the shoulder. Pedestrians are allowed to walk on the shoulder, so that's a place of relative safety contemplated by the Supreme Court in Whitmire. If you're going to say no, you've got to be all the way back. Was this submitted on cross-motion to the summary judge? It was. And in our view, the one issue that we had... So, both parties wanted it resolved as a matter of law? They did. There were some factual nuances that we pointed out, both at the district court... I've seen one of these declaratory judgment cases sent to a jury. I mean, for some reason, they just don't get sent to juries. And most of them are resolved on cross-motions for summary judgment. Yes, sir. The reason here is there are... Ms. Kramer testified to some things that even contradicted her prior earlier statement. And so, normally, in these types of cases, the version of what happened is relatively undisputed. Here, it was generally undisputed, but there were a couple of key things, largely based on her intent. And, of course, a couple of findings that the district court made, for example, that she was trying to get to the ambulance or crossing the street, that was contradicted by evidence that she was standing and waiting and maybe was still directing traffic. And intent is a hard thing to create factual issue on because what's in someone's head, that's why it shouldn't be considered. But certainly, there were some nuances. But our view was you take the evidence in the light most favorable to the non-moving party. So, if everything favorable to her is considered, it still doesn't get her out of a place of relative safety and into the actual process of entering a vehicle. Apart from this term, safety, because safety, as you point out, is always relative. I gather, in your view, the only material fact is that it's undisputed that she was across the street from the vehicle and that there was traffic between her and the vehicle. That is undisputed. She was off the roadway across the street from the vehicle. And there was traffic passing between her and the vehicle. Yes, sir. Which would have prevented her from entering the vehicle or getting into the vehicle at that time, whether she was intending to or not? There might be a dispute there, but her activity was that of standing and waiting, not of getting into the vehicle. And there's other cases that we cited that talk about not approaching or getting to the vehicle, which would answer your question, Judge Keenan, about at what point. You might draw the line, and that might have to be case by case. Here, we're just outside of any reasonable interpretation of Whitmire because of her location across the street. There's not a single case that's been submitted that ever found someone was occupying a vehicle from being off the roadway standing still. There are a number of cases that have been briefed that found a person was not occupying a vehicle despite the fact they were in the roadway and moving toward the vehicle and as close as four or five feet away. Would this really be in a class of one? It likely would, except for the, you know, affirmance of the Whitmire standard that if you're in a place of safety like a sidewalk or a shoulder of the road away from the vehicle, you have not yet begun the process of entering. That would have a little more universal application, I believe. But, you know, Whitmire does say it's case by case, but one of the factors is, you know, if you have to get to a place of safety to end the process of exiting, you have to, by logic, you have to have left a place of safety to begin the process of entering. It may begin later than that, but it certainly can't begin before that, and that's what we have in this case. All right. Thank you, sir. Thank you. Thank you. Mr. Goins. Good morning. May it please the court, on behalf of Ms. Kramer, this court should affirm the decision of the district court in finding that Ms. Kramer is entitled to underinsured motorist coverage under South Carolina law. With that being said, I understand that this court may be concerned about whether or not diversity jurisdiction is actually proper in this case. It has been. And at the threshold, it's been our position consistently throughout that removal and the failure of the district court to actually remand this case to South Carolina was improper. If you look at jurisdiction, the only mechanism that this court has for jurisdiction is something called procedural misjoinder. And in looking at the case law, I've yet to find any fourth circuit opinion adopting and recognizing procedural misjoinder. Why is that important? Because this circuit, along with other circuits, only say that removal can be proper if it's fraudulent joinder. Fraudulent joinder looks at was there outright fraud and depleting of jurisdictional facts, or was there no possibility at all that the plaintiff would ever be able to maintain or establish a cause of action against the end state? So even though you won in the district court below, you want us to just get you out of district court and let you start all over and lose in South Carolina? That's not it, Your Honor. We believe at first that the district court is correct. But since in the last week or two, the court asked to provide supplemental briefing on actually jurisdiction, I do want to raise the issue that procedurally speaking, when you look at the fact that federal courts must strictly construe removal jurisdiction, I do think jurisdiction is improper. That being said, I do believe, quite frankly, that the district court got it right on the merits. And I think the South Carolina court equally would get it right on the merits. And it goes to your point that you stated earlier, why can't we send this to the South Carolina Supreme Court as a certified question? That was asked at the district court level because, quite frankly, regardless of jurisdiction, this is an issue and matter of first impression in South Carolina. South Carolina quite obviously determines issues of underinsured and uninsured motorist coverage based on public policy reasons. For the last 30, 40 years, UIM coverage has been determined largely on public policy grounds. And if it's South Carolina public policy at play, then the South Carolina court is likely the best court to determine those issues. But with that being said, these are the disputed facts, the undisputed facts. Is that Ms. Kramer did arrive... If we said that there was no jurisdiction, wouldn't that be tantamount to saying that someone could simply join the action against the insurer with an action against the underlying tortfeasor? And if we... Oh, that's not a misjoinder. That would knock all declaratory judgment actions. And insurance cases from coming into federal court? Well, not necessarily. Because in South Carolina, the South Carolina statute says that you actually have to name and serve the at-fault driver for an underinsured motorist coverage action that never had viability. And oftentimes when you have a UIM tort action and a UIM coverage action, when coverage is disputed... Are you saying it's a compulsory joint? It's not compulsory, but you actually have to name the at-fault driver as a defendant. Now, in cases where there is a coverage dispute, in practice, the tort action and the coverage action are brought simultaneously because you're dealing with the same operative facts, the accident. They very often seem to be decoupled. And in cases, for example, when you have a coverage action and with a tort action simultaneously, the state court judge, on a summary judgment motion, will handle the coverage issue and determine yes or no there's coverage. Well, in most of these cases, the insurance company brings a declaratory judgment on its own in federal court initially to get the matter cleared up. That has happened, but oftentimes you, as the plaintiff's attorney, have to bring a DGA action as well because... In state court. Yes, Your Honor. But I'm saying that I've seen a lot of these where an insurance company wants a coverage issue cleared up. Absolutely. And they'll bring the declaratory judgment action directly. They'll join the other insurer, but they won't necessarily join... In fact, they won't. The underlying... If that would mean incomplete diversity. And in this case, if there was an issue of misjoinder, I think the proper route, if you look at the issues of federalism and that removal is supposed to be strictly construed, the district court should have remanded for the circuit court to sever. And then, in that particular case, it would be subject to a proper removal. That's the academic argument on removal jurisdiction. But at some point, this just becomes adding extra steps and hoops. And I agree with that, Your Honor. I definitely agree because Ms. Kramer, obviously, she's suffered serious and debilitating injuries, and as quick as she can be made whole as possible would be obviously in her best interest. Can a defect in removal be cured if the parties are diverse at the time the court enters the judgment? Is that the law or not? Very good question. That's the Caterpillar case from the United States Supreme Court. So why are we even making this point? Well, the issue there is, and it's actually a very important distinction, I believe, is that the jurisdictional defect was cured in Caterpillar because complete diversity was established before trial. Because the in-state defendants settled, there was actually a settlement. So the plaintiff settled, and therefore the in-state defendant... But why is that a distinction with the difference in terms of the law? Because in this case, there was no voluntary settlement. Exactly, but what I'm saying is the party was removed from the case. So what difference does it make? Well, and that would have to be an extension of the Caterpillar case. I'm just... See, you're trying to make this very complicated, and I think that the jurisdiction does have a practical aspect to it. Some people think it doesn't, that it's so totally theory and this and that, but it has a practical dimension to it. Absolutely. And here we have a case that has been decided. At the time it was decided, by virtue of the severance, the parties were diverse. You have a judgment. Rather than having everybody jump through additional hoops and run the meter and going through additional steps, why isn't a straightforward thing to do? Say there was diversity when the judgment was entered, and we'll take a look and review that judgment on appeal, which is what we normally do, and we'll give the parties an answer one way or another to the straightforward question of coverage that they pose. You want us to dig all kinds of detours one way or another to waylay the practical point that we have two parties here trying to get an answer to a straightforward question. Now why not just answer the question that's been put to us? Well, Your Honor, just so my position is clear, I just addressed jurisdiction because that is a threshold issue for the court. Our principal position, the position that was briefed in 25, 30 pages of our brief, is that the district court got it right on the merits. Why don't you tell us that? Tell us why you think the district court was correct simply as a matter of South Carolina law. Thank you, Your Honor. The undisputed fact, what I was getting to, is that she arrived to the scene in an ambulance. The ambulance was running when she got out. The lights were flashing. The flashers were on. The ambulance was put in the middle of the roadway to act as a barricade. She exited the ambulance. She checked on the passengers. She placed a call like she's supposed to do to 911 and Highway Patrol. She was in the process of crossing from the shoulder back to the ambulance to dispatch radio inside the vehicle. When you say she was in the process of crossing from the shoulder back to the ambulance, your opponent says she was standing and waiting. She was on the other side of the road and there were cars. And I heard him say that. And I went to the record and I actually pulled the actual page in question to that, and it's on page 189 of the joint appendix. This is the question that opposing counsel asked Ms. Kramer. Now you say you were trying to get back. What you meant, you were waiting to cross the street to get back to the ambulance, and this is what she said. Ms. Kramer said, yes, sir, but I was walking back towards. I had to flag a couple cars by so I could get across to get back in my unit. So waiting or however you want to word it, yes, I was trying to make an attempt to get back into my truck. So she allowed several cars to go through so she could get... So that gets back to a subjective intent point, which we've raised some questions there because of how elastic it makes the whole word occupy. Well, two points there. First, it's undisputed that she was 8 feet away, okay? It's undisputed that she was 8 feet away. Opposing counsel says 2 or 3 steps. Well, if you actually take 2 or 3 steps, that's almost 8 feet. That is nearing 8 feet. 8 feet is closer than my distance is to you. 2 or 3 of my steps are not 8 feet. How tall is she? Well, I think if you're trying to hurry back to get in an ambulance and you're taking the normal progression of steps, that's 3 steps. I think I could be 8 feet from the moon. You could be. Ms. Kramer's kind of tall, I will tell you that. And to the intent element that you're talking about as to the word occupy, the insurance company has to, I think, reasonably define what is getting in. They never defined getting in, and all ambiguity or reasonable construction should be construed against the drafter of the insurance policy, which is the insurance company. In this case, she had to get back in the ambulance. I don't think there's a question about whether or not she had to get back in the ambulance. She had to radio dispatch. But regardless of radio and dispatch, she came to the scene in the ambulance. She had to leave in the ambulance. I think to say that it is... And she had to get it out of the road at some point. And she eventually had to get it out of the road at some point. So the totality of the facts in this case certainly indicate that she had the present sense, the present impression of getting back in the ambulance. Now, at the district court level, to the point that both parties filed for summary judgment, because this is something that should be decided without a jury, and quite frankly, it should be decided on summary judgment. National casually took the position, and this is what they wrote, and this is found on Joint Appendix page 222 footnote 1. National casually said, there are numerous disputed issues of fact. However, national casually is entitled to summary judgment when the court views any disputed facts in the light most favorable to the plaintiff. So national casually below said, district court, even if you believe their facts, even if you believe their facts, it's still not enough to grant coverage. And on appeal, this is the issue of fact that now national casually wants to make germane for overturning the district court's opinion. The fact that she had to wave several cars through so she can get in the ambulance does not in any way break the causal connection between the accident and the use of the ambulance. When you look at the legal analysis for whether Ms. Kramer was engaged in the completion of an act that can be reasonably expected related to the use of the automobile, while this is a matter of first impression, the district court did correctly distill the analytical framework with existing law. First, there is no requirement that Ms. Kramer have physical contact with the insured vehicle. The leading South Carolina case, the most recent South Carolina case on point, is South Carolina Farm Bureau versus Kennedy. And the South Carolina Supreme Court makes it very clear that physical contact does not have anything to do with whether or not you're actually occupying the vehicle. And occupying the vehicle includes being outside of the vehicle. If you look at the case that's been cited in the brief of Whitmire versus Nationwide Mutual Insurance Company, in that case, the court stated that the plaintiff was two to three feet from the vehicle. In the use of this ambulance, being two or three feet from a vehicle, leaving a vehicle, and being within eight feet of a vehicle, trying to cross but allowing several cars to go by, is tantamount to the same thing. So you said the ambulance was parked in the middle of the roadway? Yes, Your Honor, to use as a barricade for people to go around. Okay, now when you say in the middle, were you saying it was parallel to the direction of the roadway or it was perpendicular to the direction of the roadway? So it's a two-lane road, and it was parked in the middle, kind of straddling the middle lane of the two lanes. So it was parallel to the lane of traffic? Yes, Your Honor, it was parallel. And so the vehicle wasn't even a full lane of travel away from Ms. Kramer. And you're saying that this vehicle, were the lanes marked? In this location, there is marked lanes, and it's actually... What is it, a double solid line, dotted line? Dotted line, dotted line, yes. Okay, and is this all undisputed in the record? I think the lanes themselves, whether they're solid or dotted, it's not in the record. Okay, is it disputed as to where the ambulance was in the roadway? I don't believe so, ma'am. I mean, it's always been that her vehicle was parked in the roadway because the accident happened in the middle of the road, so she was trying to put the ambulance there so the vehicles would end up kind of going around the accident scene instead. And to the point about South Carolina insurance coverage, the law actually says that courts are required to apply a broad and liberal construction in favor of the insured for purposes of UIM. Not only broad, but broad and liberal. And when you construe the policy terms, such as getting in or alighting from, the court considers whether the injured party was reasonably engaged in the completion of that process. And was there a causal connection between the accident and the injured person's anticipated use of the ambulance? Also, the courts consider factors such as time, intent, and proximity. We talked about intent earlier. I think intent is just one of many factors that go into this overall analysis and process to determine the use of a vehicle. I think it's important to note that this was an ambulance. And to use an ambulance properly, a paramedic has to get out of the ambulance. A paramedic has to use tools and equipment in the ambulance. A paramedic has to go back and call dispatch from the ambulance. So this is different from a standard motor vehicle accident involving passenger cars because she clearly was using the ambulance at the time of this collision. And that activating lights, barricading the accident scene, and leaving the ambulance running while exiting to check on the motorist does not break the causal connection between her use of the vehicle and this accident. When you look at the definition of... It does not actually use the word use, you're correct. But Section 387730, subsection 7, of South Carolina Code annotated that discusses what is the definition of insured. And that's why an alternative ground that we mentioned in our brief is the fact that the language in the policy is more narrow than the language of the definition of insured. And when you look back at the South Carolina Farm Bureau v. Kennedy case in DICTA, South Carolina expressed significant concern over whether or not occupying provisions in an insurance policy were in fact enforceable because they narrowly define insured. What's the limiting principle here? I mean, how far does this stretch? In this case, it would stretch to Ms. Kramer getting back into the ambulance being approximately 8 feet away. Well, I mean, 8 feet, why not 10 feet, 12 feet? If she's walking back to the ambulance like she's doing, she's in the process of getting in the ambulance. Unfortunately, the policy that they have does not define the distance. If somebody has a pickup truck, let's say a plumber has a truck and something is related to the plumber's trade in the truck and you walk away from it, you go to a house and it's maybe 20 feet away and then you are coming back, your intent is clear, you want to re-enter the vehicle, you want to get another tool, something happens to you on the way, that would be covered under your analysis. Potentially, and the reason I say potentially is because if you look at the Kennedy case, the most recent case from South Carolina that addresses this, the gentleman actually got out of his vehicle, went to the grocery store, talked to somebody outside near his vehicle and was then hit in the parking lot. So... But what does this do textually to the policy? Well, I think ultimately it goes to the public policy concerns that South Carolina courts have stated that coverage is construed favorably towards the injured person and liberally in their favor. And that kind of goes to the point why perhaps this case does involve, since it's a matter of first impression, it involves South Carolina's interpretation of a set of facts that have never been determined. Thank you. Thank you, Your Honor. Thank you. Thank you, Mr. Court. Judge Keene, I'd like to address a couple of questions you asked. It is not undisputed in the record that she was eight feet away. You would have to review that on Joint Appendix page 150 and 196 where she admitted she was off the roadway and another place said she was three feet off the roadway. Also the location of the vehicle, the first time I ever heard it was in the middle of the road. She said it was on the road behind the other vehicles. Her partner said it was on the shoulder, the opposite shoulder. That's Joint Appendix 246. Those would be disputed facts. And again, counsels... In Joint Appendix 151 she was asked approximately how far she was from the vehicle and she said probably about eight feet or so. And you're saying... Well, in the affidavit of Justin Jackson, he would place the vehicle farther away. She estimated that. And the inference would be, first of all, the roadway is broader if you're three feet off. So there's a range that could be found. She may have been eight feet, but she might have been more than eight feet and likely was. That's another disputed fact. If she had to be at least eight feet for the judge to have found that she was occupying, that's where you get into applying the wrong standard because you could have found... The order should have read, despite the fact that she was three feet off the roadway and the vehicle was across on the other side and she was standing there directing traffic, she was nonetheless occupying the vehicle. She can't support her ruling based on those facts, which is what she would have had. However, as we've submitted, she could have based her ruling in favor of national casualty on all the facts that she favorably found, including finding that she was crossing the street and make mention of that when there's no evidence in the record she was actually crossing the street. She was waiting and she admitted that. Your Honor, Judge Wilkinson, on the misjoinder, the one reason that you're concerned of in the practical aspect, and this may not apply, but in order to reverse outright, I think under the ABLE cases court would not need to address the doctrine, but one reason as a practitioner, I would love to have it done because it would send a message that this kind of joinder and this kind of practice to defeat diversity is not going to be tolerated. Of all the judges in the Fourth Circuit, they have either applied it or they have refrained solely because they've lacked direction from this court. It is a sound doctrine. As far back as 1938, the Fifth Circuit noted that whether there is a misjoinder is a matter or decision by the federal court after removal. Those matters are more properly for the determination of the trial court, that is, the federal court, after the cause is removed. That is the most simple way our district judges deal with fraudulent joinder. Similar standards would apply, obviously, to fraudulent misjoinder and the language of 1441B seems to apply equally to both. I don't see how it carves out one and not the other, so I think there's statutory support for the doctrine. I would urge the court to adopt it in this case, even though under the ABLE case of this court, summary judgment could be reviewed without adopting or even rejecting the doctrine, but I would certainly urge the court not to reject the doctrine because it seems to be a sound doctrine and, as the court has noted in some of its questions. The only other thing is that this ruling and the combining of basically the use argument, which under South Clive's well-established case law, there's no use here. There's three elements. If you work in reverse order, the final element is that the vehicle has to be used for transportation at the time of the accident. That doesn't apply. And there's every case where someone has exited a vehicle cuts off as an act of independent significance under the second. So Ms. Kramer was not using the vehicle. The other way she would qualify statutorily is to be a guest in the vehicle. That's why in the Kennedy case, they were reviewing policy language that had a physical contact requirement even when you were entering or exiting. In other words, door on the door handle or the frame as you're getting in had to be that close. That may or may not be statutory. Our language does not require that. The Whitmire case, interpreting similar language, says physical contact is not required. We acknowledge that. But the points of beginning the process, not being able to begin while you were still on the shoulder of the road, standing still, that can't be. That is not a disputed fact. And that is the basis on which the court should be reversed outright in the judgment entered for national casualties. We thank you. Thank you.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Stephanie D. Thacker